Truman Minter Lawson *v.* Hursey R. Lang *et al.*

(No. 7460)

Submitted April 18, 1933.   Decided May 2, 1933.

(Rehearing denied June 9, 1933)

*Powell & Clifford,* for appellant.
*E. G. Smith,* for appellee.

Kenna, Judge:

This suit was brought in the circuit court of Harrison County by T. Minter Lawson to enforce the liens of certain executions against a fund of $1400.00 held by the Bridgeport Bank and for other purposes not pressed on this appeal.   The court below decreed in favor of plaintiff against the bank, and the bank prosecutes this appeal.

On January 3, 1923, T. Minter Lawson obtained a judgment in the circuit court of Harrison County against Hursey R. Lang and Hazel M. Lang in the sum of $2120.64.   On February 1, 1923, Lawson obtained another judgment against

Hursey R. Lang alone in the sum of $3080.56. The efforts of Lawson to realize upon these judgments against Lang by means of executions gave rise to the controverted matters of this suit.

On May 31, 1928, Lawson caused executions to issue upon both of the foregoing judgments, returnable to the next July Rules. These executions are not marked to indicate the time at which they were received by the officer into whose hands they were placed. The clerk's notation on them is: "Returned to Clerk's Office and filed this 2nd day of July, 1928." Each of these executions bore the return "no property found", dated June 25, 1928, and signed by the proper officer. On June 6, 1928, both of the foregoing executions were docketed in the office of the clerk of the county court of Harrison County. This docketing was before the return day of the executions.

On December 23, 1929, Hursey R. Lang obtained a decretal judgment in the circuit court of Harrison County against one J. R. Nuzum in the sum of $2273.89 upon an indebtedness that had existed since the close of the year 1926. On December 23, 1929, additional executions were issued on the Lawson judgments and were made returnable to January Rules, 1930, and on January 2, 1930, each was returned "no property found". A few days prior to January 27, 1930, negotiations were begun between one Teter, cashier of the Bank of Bridgeport, and Nuzum, the purpose of which was to enable Nuzum to borrow enough money from the bank to pay the Lang debt, evidenced by the judgment against Nuzum before referred to, in full. In the course of these negotiations, arrangements were made by Powell, counsel for Lang, and Teter, cashier, by which it was agreed that if the bank loaned Nuzum sufficient money to pay the Lang debt in full, upon the receipt of the payment from Nuzum, Lang would pay in full an indebtedness owed by him to the bank amounting to approximately $1400.00. On January 28, 1930, between 8:30 and 9:30 A. M., the transaction for the loan to Nuzum was closed. Nuzum and Lang were both at the bank. They were not on good terms and did not come in personal contact with each other. Nuzum drew his check to Lang on the Bridgeport Bank, after his note had been accepted by the bank and the sum of money

had been entered upon his pass book to his credit, and this check was delivered to Lang in the directors' room of the bank. It was indorsed by him and by Mr. Powell, his attorney, and the bank produced the amount of the check in currency. This currency was taken to the directors' room and there the amount of Lang's debt to the bank was counted out and paid over by Lang to the bank. The remaining currency was retained by Lang and was paid out by Lang to other and different creditors. The check delivered by Nuzum to the order of Lang and cashed by the bank appears to have been actually cleared and the money paid on it by the bank on January 28th. The records of the bank showing the transaction show it as of that date. However, the stamp on the back of the check, indicating payment, bears date of January 29th. This is attempted to be explained by showing a mistake of the clerk in setting his stamping machine, or by some other inadvertence. On the same day (January 28th, 1930) at about noon, Mr. E. G. Smith, counsel for Lawson, called the bank inquiring about fund on deposit in the name of Hursey R. Lang, and informed a clerk that an order of the court (presumably a suggestion) was being issued requiring the payment of any such funds of Lang to Lawson. On the same day, still further executions were issued on the judgments of Lawson against Lang. These executions were returned " no property found" under date of February 12, 1930.

There is conflict in the evidence as to whether the bank, in addition to the foregoing circumstances, had actual notice that executions were outstanding on the Lawson debt against Lang. Lawson testified that in a conversation with Teter, cashier, prior to the closing of the transaction at the bank, he was asked by Teter whether he expected to get his money from Lang; that in replying he told Teter substantially what he was doing in an effort to realize on the judgments, stating specifically the fact that he had caused executions to issue. On cross-examination, Lawson could not define the word "execution". This testimony of Lawson is denied by Teter, and he says that the first information he had concerning outstanding executions on Lawson's claim was after the transaction was closed at the bank on January 28, 1930.

The court below held in favor of Lawson and against the

bank, stating, in a memorandum which is made a part of the record, that the bank received payment of its debt from Lang in money that was subject to the lien of plaintiff's executions and that the bank not being one of the class of persons excepted from the operation of the lien under section 2 of chapter 141 of the Code of 1923, was bound by the lien against that fund without regard to whether it had either constructive or actual notice of the Lawson executions. It is from this decree that the bank prosecutes this appeal.

It appears from the evidence that the transactions out of which the judgment of Lang against Nuzum grew were completed in the year 1926. It is therefore clear that at the end of 1926, Nuzum was indebted to Lang, on this claim which was afterwards reduced to judgment December 23, 1929. Lawson took executions May 31, 1928, and these were docketed June 6, 1928, in the office of the clerk of the county court of Harrison County. We have no difficulty in holding that the lien of these executions attached to the debt of Nuzum to Lang, which was a chose in action. Having attached to that debt, the docketing had the effect of continuing the liens. And when Lang obtained his judgment against Nuzum on December 23, 1929, the effect of the judgment was simply to increase the dignity of the claim upon which it was based. The lien continued to bind the judgment. *Gibson* v. *Green's Adm'r.*, 89 Va. 524, 16 S. E. 661, 37 Am. St. Rep. 888. By reducing his claim to judgment Lang did not acquire new property not subject to the Lawson execution liens. He merely dignified the evidence of his debt and added to its security. So that on January 28, 1930, when the parties went to the Bridgeport Bank to complete the transaction between Nuzum, Lang and the bank, Lawson had a definite lien upon the judgment that Lang held against Nuzum. Furthermore, the basis for this lien, i. e., the executions which he had duly docketed, were fortified by the constructive notice of the public records. When Nuzum paid Lang the amount of his judgment at the Bridgeport Bank, Lang did not acquire any new property. To say that a debtor by the mere expedient of converting his property into currency can defeat the claim of creditors who have valid liens against that property would surely operate to encourage all manner of fraudulent maneuvering. In Lang's

hands the money and currency that he got in satisfaction of the Nuzum judgment was as much subject to the execution of Lawson as was the original judgment itself. The authorities do not hold that currency is not subject to the lien of an execution. They hold that money in current circulation is not subject to an execution lien. This situation is different. Here, the money is, so to speak, in bulk, the same amount in exactly the same bills has merely passed from hand to hand, not in ordinary commercial transaction, but pursuant to one common understanding, and this common understanding was participated in by the judgment debtor, Lang, and part of its effect was to bring the currency into his hands, and from him into the hands of the Bridgeport Bank as a simultaneous transaction. During this transaction, the fund remained intact, both as to amount and as to the very bills that went to make it up. When it came into the hands of the bank, how did it get there? The bank got it from Lang. Lang owed the bank money and the bank took $1400.00 of this currency in satisfaction of its debt. That it should do so was part of the understanding with Nuzum, who borrowed money from the bank to pay Lang. It was part of the understanding with Lang, who agreed that when Nuzum paid him, he would immediately pay the bank. The bank says that it was a purchaser for value (its pre-existing debt due from Lang being the consideration moving from it) of the money that Lang turned over to it. Conceding that it was, it took, under the statute, subject to the duly docketed execution liens of Lawson.

We are of opinion that the lien of the Lawson executions attached to the judgment that Lang held against Nuzum. And having attached to that judgment, it followed the fund realized by Lang when that judgment was paid by Nuzum. Therefore, when the bank took this money from Lang it was subject to the execution liens of Lawson. That being so, the decree of the court below finding the bank liable to Lawson for the amount of money paid by Lang to it, must be affirmed.

*Affirmed.*